IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

APPEAL NO. 12-3220
_____

LYLE RIDOUT,

Plaintiff-Appellant,

vs

JBS USA, LLC, aka SWIFT BEEF
COMPANY,

Defendant-Appellee.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA, THE HONORABLE
ROBERT W. PRATT, PRESIDING JUDGE
_____

BRIEF OF APPELLANT, LYLE RIDOUT
_____

John O. Haraldson
SELLERS, HARALDSON
AND BINFORD
400 Locust Street, Suite 170
Des Moines, Iowa 50309
Telephone: (515) 224-6686
Facsimile: (515) 244-2650
email:haraldsonlaw@yahoo.com

ATTORNEY FOR APPELLANT

1

## SUMMARY OF THE CASE

This appeal arises from an Order in the United States District Court for the Southern District of Iowa granting Defendant's JBS-USA, LLC's Motion for Summary Judgment. Judgment was entered on August 21, 2012. Lyle Ridout asserted that his discharge by the Defendant violated the Age Discrimination in Employment Act ("ADEA") and the Iowa Civil Rights Act ("ICRA").

Ridout contends that the District Court erred in its interpretation of the evidentiary burdens upon him under existing cases law of both the ADEA and the ICRA. Ridout asserts that the evidence shows that a jury question was generated in that his age played both a "determinative factor" under the ADEA and a "motivating factor" under the ICRA and that the district court's decision should be overturned and the matter remanded for a jury trial.

Appellate Case: 12-3220   Page: 2   Date Filed: 10/31/2012 Entry ID: 3969746

# REQUEST FOR ORAL ARGUMENT

This Appeal presents important issues involving the proper standard of analysis in interpreting the evidentiary burdens upon a Plaintiff in establishing age discrimination evidence under either the ADEA or Iowa's ICRA. Oral Argument will clarify the legal issues and factual disputes affecting the outcome of such cases at Summary Judgment. The Appellant, Lyle Ridout, therefore respectfully requests the Court grant twenty (20) minutes for oral argument.

Respectfully submitted

*/s/John O. Haraldson*_____
John O. Haraldson
Sellers, Haraldson and Binford
400 Locust Street, Suite 170
Des Moines, Iowa 50309
Telephone: (515) 224-6686
Facsimile: (515) 224-6760
email:haraldsonlaw@yahoo.com

ATTORNEY FOR APPELLANT

Appellate Case: 12-3220    Page: 3    Date Filed: 10/31/2012 Entry ID: 3969746

# TABLE OF CONTENTS

SUMMARY OF THE CASE.................................................................. 2

REQUEST FOR ORAL ARGUMENT............................................ 3

TABLE OF CONTENTS................................................................... 4

TABLE OF AUTHORITIES.............................................................. 6

JURISDICTIONAL STATEMENT................................................... 9

STATEMENT OF ISSUES PRESENTED FOR REVIEW.............10

STATEMENT OF THE CASE.........................................................11

    Nature of the Case...................................................................11

    Course of Proceedings............................................................11

STATEMENT OF THE FACTS......................................................12

STANDARD OF REVIEW.............................................................23

SUMMARY OF THE ARGUMENT...............................................24

ARGUMENT..................................................................................26

    I.    Ridout's Claims under both State and Federal Law were
           supported by evidence of age discrimination in his
           termination that should have been heard by a jury.....................26

           A. Ridout met the Prima Facie Requirements............................26

           B. Ridout provided Evidence of Age Discrimination from
               which a Reasonable Juror could find for him........................27

           C. Ridout's claim of Age Discrimination under
               State Law........................................................................... 34

           D. Ridout's claim of Age Discrimination under the
               ADEA.................................................................................35

Appellate Case: 12-3220     Page: 4     Date Filed: 10/31/2012 Entry ID: 3969746

II.     Ridout demonstrated evidence for which a    Reasonable
        Juror could find persuasive evidence of pretext along
        with evidence that age was the basis for termination............. 38

CONCLUSION............................................................................... 45

CERTIFICATE OF COMPLIANCE............................................... 47

CERTIFICATE OF SUBMISSION.................................................. 47

CERTIFICATE OF VIRUS SCAN................................................... 48

INDEX TO ADDENDUM.............................................................. 49

Order dated August 20, 2012

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Acevedo Parrilla v. Novartis Ex Lax, Inc.*, ___ F.3d ___,
2012 WL 4801318 (1st Cir. October 10, 2012).......................................... 34

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...............................23, 24

*Arroyo-Audifred v. Verizon Wireless, Inc.* 527 F.3d 215
(1st Cir. 2008)..............................................................................................29

*Bienkowski v. American Airlines, Inc.*, 851 F.3d 1503
(5th Cir. 1988)..............................................................................................30

*Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354
(11th Cir. 1999)...........................................................................................44

*Deboom v. Raining Rose, Inc.,* 772 N.W.2d 1 (Iowa 2009)........................34, 35

*Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862
(8th Cir. 2009)..............................................................................................38

*EEOC v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003)......................................40, 41

*Erickson v. Farmland Indus., Inc.*, 271 F.3d 718 (8th Cir. 2001)................44

*Geller v. Markham*, 635 F.2d 1027 (2nd Cir. 1980)..................................... 36

*George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005).......................................43, 44

*Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134 (7th Cir. 1997).....................32

*Gross v. FBL Fin. Servs., Inc.,* 129 S.Ct. 2343 (2009)..................................34-36

*Haigh v. Gelita USA, Inc.*, 632 F.3d 464 (8th Cir. 2011)...............................27

*Holbrook v. Reno*, 196 F.3d 255 (D.C. Cir. 1999)...................................44

*Johnson v. Minnesota Historical Society*, 931 F.2d 1239
(8th Cir. 1991)..............................................................................................24

*Johnson v. University of Iowa*, 431 F.3d 325 (8th Cir. 2005).........................41

Appellate Case: 12-3220     Page: 6     Date Filed: 10/31/2012 Entry ID: 3969746

**CASES**                                                                    **PAGE(S)**

*Johnson v. Zema Systems Corp.*, 170 F.3d 734 (7th Cir.1999)................. 32

*Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359 (7th Cir. 2001)...............32

*Kohrt v. MidAmerican Energy Co.*, 364 F.3d 864 (8th Cir. 2004)............38

*McGinnis v. Union Pacific Railroad*, 496 F.3d 868
(8th Cir. 2007)...................................................................................26

*Merrick v. Farmers Ins. Group*, 892 F.2d 1434 (9th Cir. 1990)................29

*Newberry v. Burlington Basket Co.*, 622 F.3d 979 (8th Cir. 2010)............35

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308,
116 S.Ct. 1307 (1996)........................................................................33

*Raad v. Fairbanks North Star Borough School Dist.*,
323 F.3d 1185 (9th Cir. 2003)................................................................44

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)....................................24, 31, 39, 40, 45

*Schott v. Care Initiatives,* 662 F. Supp. 2d 1115 (N.D. Iowa 2009)............35

*Shelley v. Geren*, 666 F.3d 599 (9th Cir. 2012).......................................43

*Tusing v. Des Moines Independent Community School
District*, 639 F.3d 507 (8th Cir. 2011)..........................................................36

*Umpleby v. United States*, 806 F.2d 812 (8th Cir. 1986).............................24

*Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441 (1st Cr. 2009)................29

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).............................. 31

*Walton v. McDonnell Douglas Corp.*, 167 F.3d 423 (8th Cir. 1999)........... 29

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003).......... 45

*Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074
(8th Cir. 2008).................................................................................23, 36

7

## STATUTES

| | PAGE(S) |
|---|---|
| 28 U.S.C. §1291 | 8 |
| 28 U.S.C. §1331 | 8 |
| 28 U.S.C. §1367 | 8 |
| 28 U.S.C. §1446(d) | 8 |
| 29 U.S.C. §621 | 11 |
| Iowa Code Chapter 216 | 11 |

## OTHER

*Lex K. Larson, Employment Discrimination*, §8.08[4]
(2nd. ed. 2005).............................................................. 43

Appellate Case: 12-3220     Page: 8     Date Filed: 10/31/2012 Entry ID: 3969746

# JURISDICTIONAL STATEMENT

1.      The Honorable Robert W. Pratt, Senior Judge of the United States District Court for the Southern District of Iowa, rendered the decision from which the case is appealed.

2.      Jurisdiction for the case in the District Court was premised initially upon diversity jurisdiction pursuant to 28 U.S.C. §1446(d), subsequent amendment to the case once in Federal Court also added the premise of federal question jurisdiction pursuant to 28 U.S.C. §1331, with supplemental jurisdiction over the Plaintiff, Ridout's, state law claim pursuant to 28 U.S.C. §1367.

3.      Jurisdiction of this Court is pursuant to 28 U.S.C. §1291. Judgment for the Defendant, JBS-USA, LLC, was entered, following the Court's Order, on August 21, 2012. The Notice of Appeal was timely filed with the Clerk for the United States District Court of the Southern District of Iowa, Central Division and provided to counsel of record for JBS-USA, LLC, on September 13, 2012. (App. 368)

Appellate Case: 12-3220     Page: 9     Date Filed: 10/31/2012 Entry ID: 3969746

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.  Ridout's Claims under both State and Federal Law were supported by evidence of age discrimination in his termination that should have been heard by a jury

*Deboom v. Raining Rose, Inc.,* 772 N.W.2d 1 (Iowa 2009)

*Gross v. FBL Fin. Servs., Inc.,* 129 S.Ct. 2343 (2009)

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)

II. Ridout demonstrated evidence for which a Reasonable Juror could find persuasive evidence of pretext along with evidence that age was the basis for termination

*EEOC v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003)

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003)

Appellate Case: 12-3220    Page: 10    Date Filed: 10/31/2012 Entry ID: 3969746

## STATEMENT OF THE CASE

**Nature of the Case**: Ridout brought a claim age discrimination in violation of the Iowa Civil Rights Act (Iowa Code Chapter 216, "ICRA") in a Petition filed in the Iowa District Court for Polk County. The Defendant removed the claim based on diversity jurisdiction which was granted, Ridout amended his Complaint to add a claim of age discrimination under the Age Discrimination in Employment Act (29 U.S.C. §621, *et seq.* "ADEA").

**Course of Proceedings**: This appeal follows the entry of an Order granting the Defendant JBS-USA, LLC's Motion for Summary Judgment of Ridout's age discrimination claims under both the ADEA and ICRC.

Ridout filed his complaint (originally a Petition) in the Iowa District Court of Polk County on March 10, 2011. The Defendant asserted diversity jurisdiction and removed the matter to the United States District Court for the Southern District of Iowa on April 13, 2011. Defendant filed its Answer on April 14, 2011. Ridout filed an Amended Complaint adding a claim of age discrimination under the ADEA on June 13, 2011. JBS-USA, LLC filed its Amended Answer on June 15, 2011.

On May 31, 2012, JBS-USA, LLC filed a Motion for Summary Judgment of all claims. Ridout, having been granted an extension of time, filed his Resistance to the Motion for Summary Judgment on July 2, 2012. JBS-USA,

Appellate Case: 12-3220    Page: 11    Date Filed: 10/31/2012 Entry ID: 3969746

LLC, filed a Reply on July 9, 2012.

On August 20, 2012, the District Court filed an Order granting JBS-USA, LLC's Motion for Summary Judgment. On August 21, 2012, the Clerk of Court for the Southern District of Iowa entered Judgment for JBS-USA, LLC.

Ridout filed a Notice of Appeal on the Judgment on September 13, 2012.

## STATEMENT OF FACTS

The Defendant owns a large, industrial, pork processing facility in Marshalltown, Iowa. (App. 224-26) The Defendant had recently purchased the plant and had instituted a "culture change". (App. 210-211) This case arises over the termination of a 62-year old supervisory employee who had worked at the same location his entire adult life, more than forty years. The Appellant, Lyle Ridout, was terminated on May 28, 2010. (App. 104, 105)

Mr. Ridout had been hired to work at the facility in 1968 and had worked at the plant continuously until he was terminated in May 2010. (App. 276, 284) At the time of his termination Lyle Ridout held the position of Rendering Superintendant at the Defendant's Marshalltown processing plant. (App. 276)

The plant was a loud industrial setting in which Plaintiff had worked every day since Lyndon Johnson was President. (App. 195, 222) The work environment is so loud Mr. Ridout had incurred a substantial hearing loss during his employment making it difficult to hear as well as requiring he speak loudly to

12

be heard over the ambient noise.  (App. 222, 277)

Not surprisingly, loud voices and cursing are not uncommon on the work floor at the plant and had been rarely, if ever, punished.  (App. 232-33)

Mr. Ridout, after 41-years service being was allegedly terminated for a single isolated incident of speaking too loudly to his supervisors during a conversation as the men were standing close to the operating machinery on the work floor.  (App. 195, 222)

Ridout was one of four supervisory employees let go in the few months surrounding his discharge, all of these were significantly 50 or older, three, including Mr. Ridout, over 60.  (App. 233-235, 286-290)   On the day he was discharged Ridout was told by Tony Harris, the Head of Human Resources from the Corporate Office in Colorado, that Ridout "didn't fit into the scheme, the direction the company was headed".  (App. 173-74)

*The Rendering Process*

There are three facets of "Rendering"; one facet was "eatable rendering" where the pork by product is sent through a grinding centrifuge to obtain eatable oils; a second was a "plasma process" where red and white blood cells are separated until they each became separate solids and made into a powder; third scraps and bones would be received, ground in the prehogger, cooked  and then made into a material called "crackling" (which is not "eatable) and then further

13

ground and processed. (App. 181-83) All of the three products were marketable commodities. (App. 181-83) The prehogor is used in the latter of these processes. (App. 181, 184)

The prehogger worked by having product fall into a collection area where it was then pulled into a rotating drum which contains hammers and anvils (raised and lowered metal shapes) which would shred and grind the product. (App. 184, 185)

The prehogor is inspected regularly by shift operators at the conclusion of each shift. (App. 192) The morning of May 13, 2010 was the first time anyone had mentioned to Ridout that were was any problem with the prehogor, including any report of excessive wear and tear on the machine. (App. 192-93)

On or about May 13, 2010, Mr. Ridout was informed by the First Shift Operator that he was having trouble transferring the product through the prehogor. (App. 183, 184)

Mr. Ridout asked Chad, from the Mechanical Department, if there was a backup rotating assembly available for the prehogor, Chad told Ridout he believed there was and then confirmed that was the case. (App. 188) Ridout instructed Chad to get together with Bill Davis the lull operator (heavy equipment) and bring the rotating assembly to the Rendering Department. (App. 188)

During this time, Mr. Ridout was informed by the cooker operator in his

14

department, Mr. Bradbury, that he had figured out a way to get the prehogor working better and the machine would work for a while. (App. 188) After hearing this from Mr. Bradbury, Ridout instructed Chad that the replacement of the rotating drum should be done after the shift that same night. (App. 188) The situation remained the same until the end of the Ridout's shift. (App. 189)

On the next shift, the Second Shift, while Mr. Ridout was no longer at work, the prehogor began to be so problematic that the Shift Supervisor, Dan Purk recommended it be shut down and that Maintenance replace the rotating assembly slightly earlier than planned. (App. 189) Ridout was informed of this by Purk and he approved the recommendation. (App. 189) The process of replacing the rotating assembly took three to five hours. (App. 189-90)

When Ridout arrived at 4:30 a.m. the next morning, the prehogor was operating and the process proceeding as it normally would. (App. 190)

Because of the shut down there was a backlog of product to be caught up in processing. (App. 191)

At approximately 6:30 a.m. on May 14, 2010, Todd Carl, Troy Mulgrew (General Manager), Mike Mortenson (Assistant Plant Engineer) and Cyril Thill (Plant Engineer) came to the Rendering Department. (App. 193) At the time Ridout was filling out daily reports in his office near the work area. (App. 193-94) Mr. Carl came to Ridout and said "it would behoove me to come out to the

Appellate Case: 12-3220    Page: 15    Date Filed: 10/31/2012 Entry ID: 3969746

prehogor". (App. 194) Todd Carl indicated to Mr. Ridout that Troy Mulgrew was upset. (App. 194)

Ridout followed Mr. Carl out to the area of the prehogor, which was in operation, and found the other three gentlemen standing together near the equipment while it was in operation. (App. 194) The men were 12 to 15 feet away from the operating prehogor. (App. 222)

Todd Carl asked Mr. Ridout, "Who is responsible for this?" indicating the prehogor and its earlier problems. (App. 195) Ridout responded "The maintenance department is responsible for all repairs of the equipment". (App. 195)

It was loud in the area in which this conversation took place and it was difficult to hear. (App. 195, 222) Considering that Ridout has substantial hearing loss this, along with the ambient noise, caused him to speak loudly. (App. 277)

After Mr. Ridout said that the maintenance department was responsible for repairs, Ridout believed -- as it was hard to hear -- that Troy Mulgrew told him to "tone it down a couple of octaves or [you're] going to be sent home". (App. 195)

At this time Ridout could not understand why all of these individuals were present as the prehogor had broken down many other times it had been repaired earlier and was now operating while he and his subordinates were working very hard to overcome the build up caused by the shutdown. (App. 196) He was

16

further aware that two older employees had recently been terminated. (App. 279) Ridout did not think he was being aggressive on the morning of May 14, 2010, just loud. (App. 278)

Ridout replied to Mulgrew, "You don't want to send me home." (App. 197) Mulgrew responded by stating, "Go home, go home, go home". (App. 197) Having been instructed to go home by Mulgrew, Mr. Ridout did so. (App. 198) Mr. Ridout was subsequently informed he was suspended until further notice on May 18, 2010. (App. 283)

Ridout was asked to return to the plant for a meeting on May 25, 2010. (App. 198) At the meeting of May 25, 2010, Ridout stated that he was remorseful about the incident of May 14, 2010, was, as always, devoted to the company and wanted to return to work. (App. 198, 279) Three days later Ridout was terminated. (App. 104, 105) On the day of his termination, Tony Harris told Ridout õI didnøt fit into the scheme, the direction the company was headed.ö (App. 173, 237)

### *The Prehogor*

Todd Carl claimed the Plant Engineer, Cyril Thill, who was in charge of maintenance told him that the prehogor needed to be repaired every *six months*. (App. 247) However, Thill stated the Prehogor was generally changed out every *eight months* because of normal wear and tear. (App. 211) Thill admitted the

17

Maintenance Department played a role in the prehogor breaking down.  (App. 213)

Todd Carl asserted that Ridout's department was responsible because the breakdown of the prehogor was a preventative maintenance issue and the breakdown of the prehogor did not just happen.  (App. 246)   However, when the prehogor broke down on this occasion Mike Mortenson, the Assistant Maintenance Department, stated "I can't believe it went bad".  (App. 271)   The day before the prehogor broke down it was operating "í  just fine ... We had no problem with it whatsoever".  (App. 271)

### Lyle Ridout vs. Others - Discipline

In May 2010 it was customary for the Maintenance Department to do regular inspections of equipment such as the prehogor.  (App. 256)  The individual who scheduled repairs and maintained the prehogor was from the Maintenance Department.  (App. 212)

The person in the Maintenance Department directly responsible would be "whoever had the P.M. at that time", that individual would have reported to Neil Hardgrave, or some other related supervisor.  (App. 213)  Supervisors such as Hardgrave would be one step down from the Assistant Manager of Maintenance, Mike Mortenson. (App. 202-203)

While Lyle Ridout was fired, no individual in the Maintenance Department received a reprimand of any kind.  (App. 215)

18

Months after Ridout's discharge, Cyril Thill was removed from the position of Plant Engineer allegedly for failing to follow up and doing incomplete work. (App. 253)  Notably, Thill had, like Ridout also worked at the plant for approximately forty years.  (App. 200)  Like Ridout, Thill was replaced by his subordinate Mike Mortenson, the same individual who was surprised the prehogor had problems in May 2010. (App. 252)

Thill could not recall any specific instance of Lyle Ridout being resistant to improvements in the Redering Department.   (App. 221)

Likewise, when asked, Tony Harris the corporate representative who took part in the decision to terminate Mr. Ridout, could not think of a specific example of Mr. Ridout being resistant to improvements in the Rendering Department. (App. 228-229)

### *Alleged Assertion of Insubordination and poor Performance*

In May 2010, Cyril Thill was the Plant Engineer, his subordinate was the Assistance Manager Mike Mortenson.  (App. 204)  Lyle Ridout, as the Rendering Department Manager was reviewed by Cyril Thill. (App. 205) Thill did reviews of Ridout's performance on an annual basis, or at least was supposed to do so.  (App. 206)   The last performance review of Ridout contained in his personnel file was performed for the year 2008, and was 3.63 on a 5.0 scale, meaning he met expectations.  (App. 207)  Thill did not recall ever giving Ridout a bad evaluation.

19

(App. 209)

Troy Mulgrew testified that he made up his mind to terminate Lyle Ridout after the May 14, 2010 incident. (App. 263) Yet, Mr. Mulgrew never believed that during their conversation that Ridout was invading his personal space. (App. 258) The termination form of the Defendant regarding Ridout states he was terminated involuntarily for "inappropriate behavior" with a subsequent comment adding job performance. (App. 276) Todd Carl admitted that Ridout only seemed "a little aggressive" (App. 278)

Cyril Thill recalls other heated conversations at the plant between other individuals similar to that of May 14, 2010, including those involving managers but other than the present case cannot recall one that led to termination. (App. 217-218) Mr. Ridout stated that he did not think he was aggressive just "loud", he was understandably defensive at the time the managers came down to see him for a situation that had been solved through his staff's hard work and for which they were not solely responsible. (App. 278) He was also aware the other older employees had recently been terminated. (App. 279)

Tony Harris admitted that arguments, loud voices and cursing are not uncommon events on the work floor at the plant and is rarely if ever punished. (App. 232-33)

20

*Ridout replaced by Younger, Less Qualified Individuals*

Thill stated that when JBS USA bought the plant in Marshalltown there "had been a culture change". (App. 210)

Ridout was terminated by JBS-USA, LLC on May 28, 2010. (App. 104-5) Ridout was informed by Tony Harris that "I didn't fit into the scheme, the direction the company was headed". (App. 173, 237)

Mr. Ridout was one of four supervisory employees let go in the few months surrounding his discharge, all were significantly over 50, three well over 60. (App. 234-36, 286-290)

Chad Richett replaced Ridout as the Rendering Superintendent, he had previously been a Rendering Supervisor and reported to Ridout. (App. 264) Ridout trained Chad Richett how to do his job prior to the latter replacing him. (App. 273) At the time of his promotion to replace Lyle Ridout, Chad Richett was in his mid-30s. (App. 266) Approximately a year and half after he was promoted in the wake of Ridout's termination Chad Richett was not terminated, but demoted from Rendering Superintendent back to Rendering Supervisor. (App. 243, 244) Richett was demoted because of performance. (App. 244, 245) Both Richett's promotion and demotion decisions, rather than termination, were made by Troy Mulgrew. (App. 266)

Richett was succeeded as Rendering Supervisor by John Holden who was

21

hired in late 2011 from another company. (App. 242-43) John Holden was approximately 33 years of age at the time. (App. 243) Holden had worked at the Marshalltown location some five years before as a Rendering Supervisor. (App. 268) John Holden's first employment at JBS-USA's location ended because he had taken a white Rotech Sock, cut two holes in it and made a facsimile of a Ku Klux Klan hood he then displayed before an African-American employee. (App. 269-270). Mulgrew was also involved in the decision to re-hire Holden, as was Carl. (App. 243-244).

Linn Knox, who was terminated as Project Manager at the age of 64 states that Mr. Mulgrew set time-deadlines for the completion of a project that were impossible to meet, and his demands required that the whole process take place on a time-schedule that was reckless and could lead to errors. (App. 291-293) Knox states that prior to Mr. Mulgrew's employment as the General Manager, he had a constructive and positive relationship with management and his past performance appraisals were satisfactory and met expectations. (App. 292)

In his dealings with Mr. Mulgrew, Knox reports that Mulgrew regularly had unrealistic expectations of what work could be performed and unreasonable time-lines for such work to be completed, while comparatively Mulgrew was patient with younger employees. (App. 292)

Knox states that his relationship and treatment by Mr. Mulgrew causes him

Appellate Case: 12-3220    Page: 22    Date Filed: 10/31/2012 Entry ID: 3969746

to believe that the reason he was terminated in January 2010 was his age. Knox had just turned 66 years-old. (App. 292)

Similarly, another older salaried employee and former supervisor Dean Welton felt poorly treated by Mr. Mulgrew. (App. 294-296) Mr. Welton recalls that after Mulgrew's hiring the company appeared to be looking for reasons to terminate him and punish him for petty reasons. (App. 295-296) It was Welton's observation that since Mr. Mulgrew became manager older employees were more closely scrutinized or punished for offenses for which a younger employee would receive lesser punishment, or no punishment. (App. 295-296) Welton further provided examples of different treatment of himself and the observed offenses of younger employees. (App. 295-96) Welton believed there was a willful effort on the part of management to discipline him without engaging in even a basic investigation before he received disciplined. (App. 295-296)

## STANDARD OF REVIEW

A district court's grant of Summary Judgment is reviewed by the appellate court de novo, applying the same standards for summary judgment as the district court. *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078 (8th Cir. 2008).

The evidence presented to the court must be such that a reasonably jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

23

*Inc.*, 477 U.S. 242, 251(1986). Because summary judgment is a drastic remedy if should not be granted unless the moving party has established the right to a judgment with such clarity that there is not room for controversy. *Umpleby v. United States*, 806 F.2d 812, 814 (8th Cir. 1986) The opposing party to a summary judgment must receive the benefit of all reasonable inferences to be drawn from the underlying facts. *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1244 (8th Cir. 1991)

ōCredibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.ö *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby,Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The function of the court is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## SUMMARY OF THE ARGUMENT

In its Order of August 20, 2012, the district court erred in not weighing the evidence properly in regard to the question of whether a reasonable juror could find that there were legitimate inferences of age discrimination either in the termination of a sixty-two year old who had been employed at an industrial plant

24

continuously for more than forty-one years for a *single incident* of talking too loudly to his supervisors.  (Order at 19, App. 360)

Mr. Ridout produced evidence that showed the new ownership and management at the Defendant's location had been more likely to dish out harsh and unmerited discipline to older employees; that younger less qualified managerial employees were treated more favorably than older managerial employees; that the source of this treatment came from the Defendant's higher management and was part of the "change of culture" that came with the acquisition of the plant by JBS-USA.

Such a culture change goes hand-in-hand with Mr. Ridout being told by the HR Representative of JBS-USA's corporate headquarters in Colorado on the day Ridout was fired that though the latter was an employee who had shown up to work day-after-day for more than 41 years and one with a fine work record,  he "no longer fit within the scheme of the company".

Further, this termination occurred -- as admitted by the employer -- after a single incident which even Ridout's supervisors conceded was commonplace and otherwise left all others but Ridout employed.  The district court played the role of juror improperly and did not provide Mr. Ridout with the proper inferences that are to be legally drawn in his favor as the non-movant in a Rule 56 Summary Judgment motion.

Appellate Case: 12-3220     Page: 25     Date Filed: 10/31/2012 Entry ID: 3969746

Ridout provided evidence from which a reasonable juror could infer age discrimination, including his replacement by a series of younger, less qualified employees, one of which had an incident of abuse arguably far more serious than Ridout's single incident. Further, the employer's asserted basis for the discharge was shown to be such that a reasonable juror could believe it to be false.

Regardless of whether pretext was demonstrated, and Ridout asserts it was, he produced evidence from which a reasonable juror could infer age discrimination under either State or Federal standards.

Mr. Ridout seeks to have the district court's order reversed and the matter returned to the district court for a jury trial.

## ARGUMENT

I.     Ridout's Claims under both State and Federal Law were supported by evidence of age discrimination in his termination that should have been heard by a jury

A.     *Ridout met the Prima Facie Requirements*

The district court properly found that Mr. Ridout met made the *prima facie* case. (Order at 15, 16, App. 356, 357) He was terminated at age 62. At the time Ridout had been employed for more than 41 years and had been a supervisor in the rendering department for some time. (SOF App. 276). Ridout was obviously qualified for his current job having successfully performed it for many years. See *McGinnis v. Union Pacific Railroad*, 496 F.3d 868, 874 n. 2 (8th Cir. 2007); see

Appellate Case: 12-3220     Page: 26     Date Filed: 10/31/2012 Entry ID: 3969746

also, *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011)   Further, Ridout was replaced first by one substantially younger person, Chad Richett, who he had trained, and who was subsequently demoted (App. 244, 245, 264, 266, 273); and then by another younger individual, John Holden, who had been terminated previously for a racial incident.  (App. 242-243, 268-270)

B.      ***Ridout provided Evidence of Age Discrimination from which a Reasonable Juror could find for him***

A short summary of the evidence from which a reasonable juror could find that age was involved in Mr. Ridout's termination include:

- The statement of Cyril Thill that with the purchase of the plant by the Defendant there had been a "culture change".  (App. 210)

- Mr. Thill's belief in a "culture change" was shared by Ridout (App. 276); Dean Welton (App. 294-297); and Linn Knox (App. 291-293), the agent of that change was Troy Mulgrew.(App. 243, 244, 263, 266, 273, 291-297)

- After years of receiving regular and favorable annual reviews Ridout suddenly ceased having them.  (App. 206, 207, 209, 285).  Even without the subsequent years of reviews, his supervisor never have a negative evaluation of Ridout⊘s work.  (App. 209)

- Ridout⊘s termination fit a pattern that existed in the company at the time and its new owners, particularly with Mr. Mulgrew.(App. 243, 244, 263, 266, 273, 291-297)

- Linn Knox, who was terminated as Project Manager at the age of 64 under dubious circumstances.  (App. 291-293)

- Mulgrew terminated Dean Welton, age 66  (App. 294-296)  Mr. Welton

27

recalls that after Mulgrew's hiring he appeared to be looking for reasons to terminate him and punish him for the most petty of reasons. (App. 295, 296)

- Welton further states it had been his impression that since Mr. Mulgrew became manager that older employees were more closely scrutinized or punished for offenses a younger employee would not receive punishment, or receive as severe punishment. (App. 294-297)

- At the time of his termination, Ridout was told by Todd Harris that he "didn't fit into the scheme, the direction the company was headed". (App. 281)

- The individual who initially replaced Ridout, Chad Richett, was nearly thirty-years the former's junior and had been trained by Ridout. (App. 244, 245, 264, 266, 273)

- Richett was demoted, not terminated, by the Defendant in substantial part for deficiencies in his performance a year and a half after replacing Ridout. (App. 244, 245)

- Richett's replacement, John Holden, was hired by the same individuals who terminated Ridout and promoted Richett. (App. 266)

- While Ridout was alleged to have been terminated for raising his voice by JBS-USA, John Holden was hired despite a history of engaging in racial abuse. (App. 269-70) Holden was apparently forgiven for his actions as he was in his thirties when he was hired back for the position. (App. 242, 243, 268-270)

- Cyril Thill after 40 years of employment was also demoted by Mulgrew for alleged performance reasons of not engaging in timely or proper maintenance of equipment – which would have included the item for which the incident leading to Ridout's discharge originated. (App. 200, 201, 253)

- The recent history of discharges of non-hourly employees show that the employer's termination of such employees during the applicable time-period involved those well-over forty years of age. (App. 286-290) In

Appellate Case: 12-3220    Page: 28    Date Filed: 10/31/2012 Entry ID: 3969746

particular, there were only three supervisory employees terminated in this time period – in addition Welton had been recently a supervisory employee (App. 294), all at least 50 years of age. (App. 286-290)

In regard to the statement of Tony Harris on the day that Lyle Ridout was discharged after forty-one years of employment, the court erred in discounting the significance of the statement as evidence that age may have played a role in the decision. The district court's reliance upon *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) is not applicable. The statement was not just related to the decisional process, it was the summation of it by one involved in the decision at the time the decision was announced. See, *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999)(relevant statements are those by decision-makers related to the decisional process)

While it is correct that the statement of Harris firing Ridout after all his years at the plant "didn't fit into the scheme, the direction the company was headed" (App. 173) could mean something other than age played a role in the discharge of Ridout -- that does not exclude the possibility that the statement did, in fact, indicate that the Ridout's age played a role in the discharge. "ADEA plaintiff's rarely possess 'smoking gun' evidence to prove their employers' discriminatory motivations" *Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 446 (1st Cr. 2009) (quoting *Arroyo-Audifred v. Verizon Wireless, Inc.* 527 F.3d 215, 218-19 (1st Cir. 2008)) It is the kind of evidence, while perhaps not "direct-

29

evidence" or an admission, is of the type that a jury should be able to consider. See *Bienkowski v. American Airlines, Inc*., 851 F.3d 1503, 1507 n.4 (5th Cir. 1988)(comments that an employee was unwilling and unable to "adapt" to change have been found to support an inference of age discrimination)

The district court erred by playing the role of the jury in excluding the possibility that Harris' statement was evidence of age-bias, even if the magic words like "old", "age" or "young" do not appear in the statement. Rather, the court in a footnote and without authority just described the statements as *"meaningless cliches that do little, if anything, to aid an employee in understanding the basis of his or her termination."* (Order at 23, FN 23, App. 364)

There is no evidentiary basis for calling such statements "meaningless cliches" other than a fact-judgment that is reserved for a jury, not the court. This is especially true when considered with the evidence that Plaintiff was discharged for a single incident and the behavior that incident exhibited, which was admitted to be both common and had no prior history of leading to discharge. This evidence adds an extra dimension and context to the remarks of Tony Harris stating to Ridout when he was fired on May 28, 2010 he did not õfit into the scheme, the direction the company was headed.ö

Did Harris mean that the previous ways of doing things at the plant ó i.e. the old ways, Ridoutøs ways, were of the past ó and so was Lyle Ridout?

30

Did Harris' remarks to Ridout when he was discharged mean that someone of Ridout's age should have known better than to raise his voice to his supervisors? And if so, what did that mean – is not thinking someone like Ridout should know better also indicative of the latter's age?

Were Harris' statements an insight of such apparent bias as above, or did they reveal an age bias that perhaps even he was not fully conscious of, nor of bias the other decision-makers – even Mulgrew – did not fully comprehend? Such implicit bias has been shown to exist and is a topic worth considering by a jury in evaluating the basis of an employment decision, especially one like Mr. Ridout who was older, had long years of dedicated service and then was let go for one incident of being too loud. See, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2564 (2011)(J. Ginsburg dissenting)("Mangers, like all humankind, may be prey to biases of which they are unaware").

Rather than consider the possible alternative meanings for the statements of Harris, the district court erroneously took it upon itself to call them "innocuous" (Order at 23, App. 364). That is a weighing of the evidence at odds with the requirements of a Summary Judgment Motion . Such determinations are for the jury. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147

31

L.Ed.2d 105 (2000).

Isolated statements may not be probative of discrimination in all instances, but when they are "contemporaneous with the discharge or causally related to the discharge decision-making process" they are indeed probative. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1140 (7th Cir. 1997)

Harris statement to Ridout was made on the day, at the time, that Lyle Ridout's long-years of service ended. It is hard to imagine that such a statement by a Corporate Representative explaining *why* Ridout was being fired is not causally related to the discharge or the process by which the decision was made. Whether it is evidence of age discrimination is a matter for the jury not the court.

The fact that Harris, Carl, and Mulgrew terminated Ridout though they too were over forty, was correctly noted by the court, as no basis of a defense from age discrimination. Further, their motivation in terminating Ridout can still allow evidence of age discrimination and be motivated by it as noted in *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001):

> õit is altogether common and natural for older people, first, to exempt themselves from what they believe to be the characteristic decline of energy and ability with age; second, to want to surround themselves with younger people; third to want to protect their own jobs by making sure the workforce is not too old, which might, if ÷ageistø prejudice is rampant, lead to RIFs of which they themselves might be the victims; and fourth, to be oblivious to the prejudices they hold, especially perhaps prejudices against the group to which they belong. We emphatically rejected the ÷same-actor inferenceø in the race-discrimination setting in *Johnson v. Zema Systems Corp.*, 170 F.3d

32

734, 745 (7th Cir.1999), and our conclusion there applies with equal force to proof of age discrimination.ö

This is simply the application of the Supreme Courtøs holding in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307 (1996)(fact that one person in protected class has lost to another in the protected class is irrelevant as long as they have lost out because of age) to the relationship of decision-maker to plaintiff instead of plaintiff to fellow employee.

The district court further erred in its evaluation of one particular piece of evidence submitted by Ridout in his resistance to the Summary Judgment Motion. As part of discovery Ridout was provided a list of all employees terminated by JBS-USA at its Marshalltown Plant from July 2009 through July 2010, just over one year.   (App. 286-290)

Ridout submitted this evidence as a comparison of those terminated who were non-hourly employees (hourly employees are signified by an "H", salaried employees signified by an "S" or in Dean Welton's case an "E" for exempt).  The Marshalltown location is a unionized workplace, but obviously salaried management employees are not covered by such a contract.  The court erred in not noting the distinction being made and the basis for offering the exhibit.  The court just saw a list of 90 or so employees.  (Order at 22, FN 22)  But the purpose of the Appendix pages 286 to 290 is to show that in that time period , only five non-

Appellate Case: 12-3220    Page: 33    Date Filed: 10/31/2012 Entry ID: 3969746

hourly employees were fired, four of those five were 50 or over, three Ridout, Knox, and Welton were over sixty. (App. 286-290) See, *Acevedo Parrilla v. Novartis Ex Lax, Inc.*, ___ F.3d ___, 2012 WL 4801318 (1st Cir. October 10, 2012) (it is relatively straightforward for one to draw statistical significance from the separately adduced fact that almost all fired employees were over forty)

## C. *Ridout's claim of Age Discrimination under Iowa Law*

In *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 13-14 (Iowa 2009), a case decided after *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2347 (2009), the Iowa Supreme Court determined that the causation standard in ICRA discrimination cases is that a "plaintiff need only demonstrate –termination occurred under circumstances giving rise to an inference of discrimination" and his or her status as a member of a protected class was *a* determining [or motivating] factor in the decision to terminate employment." *Deboom,* 772 N.W.2d at 13. In *Schott v. Care Initiatives,* 662 F. Supp. 2d 1115 (N.D. Iowa 2009), the Northern District (Judge Bennett) interpreted *Deboom* as follows:

> Notwithstanding that the Iowa Supreme Court did not mention *Gross* in its analysis, this court believes that it could not be clearer that the Iowa Supreme Court does *not* impose a –but for" causation standard in any ICRA employment discrimination case, based on age or any other protected characteristic, and that the appropriate causation standard in such cases is –motivating factor." In short, the causation standards for [a plaintiff's] age discrimination claims under

34

federal and state law are *different,* as a matter of law, even if the same analytical framework is otherwise applicable to the two claims.

- *Id.* at 1120.

The Eighth Circuit has reaffirmed the contention that the Iowa Supreme Court's interpretation of the Iowa Civil Rights Act created a lower "motivating factor" standard. See *Newberry v. Burlington Basket Co*., 622 F.3d 979, 981-83 (8th Cir. 2010)(in light of *Gross* and *DeBoom* a jury instruction requiring that age be a "motivating factor" would be error in a claim under the ADEA but not under the Iowa Civil Rights Act)

Mr. Ridout has demonstrated sufficient evidence to demonstrate that the "termination occurred under circumstances giving rise to an inference of discrimination" and his or her status as a member of a protected class was *a* motivating factor in the decision" *Deboom,* 772 N.W.2d at 13. In *Schott v. Care Initiatives,* 662 F. Supp. 2d 1115 (N.D. Iowa 2009). Thus, the district court erred in granting JBS-USA's Motion for Summary Judgment and the Order should be vacated and the matter remanded for a jury trial.

D.    ***Ridout's claim of Age Discrimination under the ADEA***

Since the Supreme Court's decision in *Gross v. FBL Financial Services*, 129 S.Ct. 2343 (2009), the standards of the *McDonnell Douglas* burden shifting standard, as applicable in the present case, are the same under both Federal and Iowa law until the final stage. At that point, while

35

under Iowa law the plaintiff need show that age was a "motivating factor" in his discharge, after *Gross*, under the ADEA a plaintiff must show at this final point that "but for" age discrimination he would not have been discharged. See, *Gross* at 2351, see also *Tusing v. Des Moines Independent Community School District*, 639 F.3d 507, 516 (8th Cir. 2011)

Therefore, under the ADEA in the summary judgment context, the plaintiff must show sufficient evidence to (1) create a "fact issue as to whether the defendant's proffered reasons are pretextual" and (2) create " a reasonable inference that age was a determinative factor in the adverse employment decision." *Tusing* at 516, citing *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)

A "determinative factor" is one that "made a difference in deciding whether the plaintiff should be employed." *Gross v. FBL Financial Services*, 588 F.3d 614, 621 (8th Cir. 2009), citing *Geller v. Markham*, 635 F.2d 1027, 1035 (2d Cir. 1980).

Mr. Ridout has produced sufficient evidence to demonstrate that age was a determining factor. First, as stated in detail above, Ridout has shown there is a fact issue as to whether the defendant's reasons are pretext. Substantial evidence that Ridout's termination fit a pattern that existed in the company in 2010 and of Mr. Mulgrew, in particular, to look for reasons to

36

eliminate older salaried employees, in that he did so in short order with Ridout, Linn Knox, and Dean Welton. Each of them were terminated for events that were at worst common or petty events that had not previously led to discharge; were replaced or treated differently than younger, similarly situated employees; were more closely scrutinized by a manager that appeared to be looking for reasons to terminate them.

In addition, Mulgrew was involved in the promotion of a substantially younger individual Chad Richett, in his thirties, who the Plaintiff had trained. (App. 266, 273) Richett was replaced a year and a half later for poor performance ó but notably Mulgrew did not terminate Richett, like Ridout was, rather Richett was demoted, something Ridout had been willing to accept but did not receive. (App. 243-245, 279-281) When Richett was demoted Mulgrew hired another individual in his mid-thirties, but unlike a one-time incident of a raised voice, John Holden had been rehired despite a history of engaging in racial abuse. (App. 243, 269-270)

Therefore, the evidence showed that younger individuals who held the same job as Ridout were held to lesser standards of conduct, and were also less qualified. They did suffer termination, but at worst demotion from Troy Mulgrew. Yet the district court found this was not evidence of age based-motives sufficient to allow a jury to hear it.

37

Though the JBS-USA claims poor performance, the district court correctly noted there was no evidence of poor performance on Ridout's part other than a presumption on the part of the decision-makers. (Order at 15, 24, App. 356, 365)

Mr. Ridout has shown there is substantial evidence that the defendant's stated reason for his discharge was false and that age discrimination was the real reason for his discharge. See, *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 872-3 (8th Cir. 2009); *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 864, 897-8 (8th Cir. 2004). The matter should proceed to be determined by the ultimate trier of fact, the jury.

II.  Ridout demonstrated evidence for which a Reasonable Juror could find persuasive evidence of pretext along with evidence that age was the basis for termination

Ridout had forty-plus years plus of satisfactory or better performance and little to no disciplinary notices. (App. 206, 207, 209, 285)  Ridout's direct supervisor Mr. Thill could not recall ever giving Mr. Ridout a negative evaluation. (App. 209)

Mr. Ridout did not think he was being disrespectful or aggressive on May 14, 2010, just necessarily loud. (App. 278)  Todd Carl admitted that Ridout only seemed "a little aggressive". (App. 278)  It certainly creates a fact question that a very long-term employee is fired over a single incident that the defendant admits

38

occurred in a loud environment and that the terminated long-term employee seemed only a "little aggressive".  See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Further there is no evidence Ridout mishandled the prehogor when it broke down without warning just prior to the May 14, 2010 incident.  It surprised everyone that the machine broke down so quickly and unexpectedly, from both the rendering and mechanical departmental standpoints.  (App. 271, 272)  The procedures for replacement were promptly followed and by the time Ridout was confronted on the work floor the prehogor was again operating nominally.  (App. 188-190, 192, 193) No individual *other than Ridout* was disciplined for the event. (App. 202, 203, 212, 213, 215 256)

The Defendant's asserted bases for the discharge is "[Ridout's] unacceptable and unprofessional behavior on May 14, 2010".  (Defendant's Brief pg. 9). However, the evidence demonstrated that this incident was neither unacceptable nor unprofessional.   Even in its decision the district court stated "Defendant's decision to terminate Plaintiff seems to the Court a poor one."  (Order at pg. 24, App. 365)  The evidence showed that there was no other individual who had been terminated for being too loud previously (App. 217-218) ó let alone for talking too loud in a location that one had to be loud in order to be heard.  (App. 195, 222). Furthermore, the evidence further demonstrated Ridoutøs alleged behavior was not

Appellate Case: 12-3220   Page: 39   Date Filed: 10/31/2012 Entry ID: 3969746

unusual at the plant. (App. 232-233)

However, there is substantial evidence, wrongly discounted by the district court that similarly situated employees to Mr. Ridout received more favorable treatment.

Mr. Ridout provided substantial evidence of similarly situated employees. The two most prominent examples are his successors Mr. Richett and Mr. Holden. The court erred in not attributing to them the status they clearly had beyond being Ridout's younger successors. They are also comparators. They dealt with the same supervisor who made employment decisions, Troy Mulgrew most prominently. (App. 264, 266) They held the same position as Mr. Ridout; and they engaged in similar conduct without the same level of punishment being inflicted upon them. *EEOC v. Kohler Co*., 335 F.3d 766, 776 (8th Cir. 2003)

It is obviously a question of fact to compare of what is more insubordinate and offensive; that Mr. Ridout was fired after 40 plus years of service on the basis of being too argumentative once or hiring back an employee who had engaged in blatantly racially offensive conduct, the level of insubordination or seriousness of his prior offense no longer being disqualifying -- for the younger employee. The explanation of JBS-USA that Ridout was fired for his alleged insubordination on one occasion seems naturally a question the jury should have been allowed to consider as pretext. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.

Appellate Case: 12-3220    Page: 40    Date Filed: 10/31/2012 Entry ID: 3969746

133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

In Mr. Richett's case, the evidence was clear that after a time succeeding the employer he was not performing his job to their satisfaction (one of the Defendant's assertions against Ridout) but rather than terminating this substantially younger successor to Mr. Ridout, they simply demoted him. (App. 243-245) Mr. Ridout had been willing to accept the same diminished role, but he was terminated, unlike Richett, by Mulgrew. (App. 243-245)

Mr. Holden had been terminated for an event that at the very least was insubordinate – the subjection of an African-American to racist paraphernalia. (App. 268) Yet, despite this incident being in his employment history at the plant, he was apparently promptly forgiven by Mr. Mulgrew and others who had terminated Ridout, and found qualified for Ridout's former position. (App. 264) Holden, like Richett was substantially younger than the Defendant both being in their mid-30s. (App. 242-245) *EEOC v. Kohler Co*., 335 F.3d 766, 776 (8th Cir. 2003); see also *Johnson v. University of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005)

Further, the district court also erred in finding that Knox and Welton were not comparators. Both Knox and Welton had been managerial and non-hourly (union) employees for approximately as long as Ridout. They were both terminated by the same individual, Troy Mulgrew, who was instrumental in Ridout's firing. (App. 102, 291) They were also both terminated close in time to

41

the termination date of Ridout. They both noted that Mulgrew treated them less favorably than younger employees, and they both were, like Plaintiff, terminated close in time to the "culture change" that the new owner of the plant, JBS-USA had implemented. (App. 291-297) They, like Ridout, did not "fit into the scheme, the direction the company was headed". (App. 288, 289) Like Ridout they were salaried individuals of long-service with the company; they were both terminated, like Ridout by Troy Mulgrew, for actions that were arguably minor at best. Further their terminations occurred close in time to that of Ridout while younger employees were known to them to be given favorable treatment by Mulgrew. (App. 291-297)

In addition, there is the long-time employee who was the Plant Engineer and Ridout's immediate supervisor, Cyril Thill. Several months after Ridout was terminated and replaced by his supervisor through Mr. Mulgrew, the latter then replaced the older Thill with his younger former subordinate Mike Mortenson. The basis for Thill being replaced sounds suspiciously like that one given for terminating Ridout, failure to timely inspect machinery. (App. 253)

Thill recalled other heated conversations at the plant between other individuals, but other than the present case could not remember another leading to termination. (App. 217, 218) Mr. Mulgrew's supervisor, Tony Harris, admitted that arguments, loud voices, and cursing are not uncommon events on the work

42

floor at the plant and are rarely, if ever, punished. (App. 232, 233) The ambient noise in the Rendering Department is usually loud and you have to speak up just to be heard. (App. 222) Troy Mulgrew, himself, never believed that Ridout was invading his personal space. (App. 258)

In the context of a discharge claim, as is the present matter, Ridout has shown that his discharge was not attributable to the two analogous common legitimate reasons for discharge: performance below the employer's expectations or the elimination of the plaintiff's position altogether. See *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) citing *Lex K. Larson, Employment Discrimination*, §8.08[4](2nd. ed. 2005)

JBS-USA says it terminated Ridout for insubordination stemming from a single incident; yet it replaced Chad Richett with another younger employee, John Holden, who had been terminated some five years earlier for taunting an African-American employee with a piece of equipment he had fashioned into a Ku Klux Klan hood. (App. 242-245, 268). A legitimate reasons for discharge seems unlikely to motivate the same individuals who terminated Lyle Ridout for being insubordinate when they hire someone who had previously been terminated for racially offensive conduct.

If Mr. Ridout no longer fit into the "scheme of the company" one wonders just what "scheme" the company desired to have, if Mr. Richett and Mr. Holden

43

are preferred as somehow more qualified and less insubordinate?  Evidence of a plaintiff's qualifications, standing alone, may be sufficient to prove pretext.  See, *Shelley v. Geren*, 666 F.3d 599, 610 (9th Cir. 2012), citing *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003)

A plaintiff can "establish pretext by showing that it was unlikely [that] an employer would have acted on the basis of the proffered reason."  See, *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001)  Evidence of a discriminatory attitude in the workplace "may also tend to show that the employer's proffered explanation for the action was not the true reason for the discharge." *Id.* The experience of Knox and Welton, as older employees in being monitored and treated more harshly than other, younger, employees matches that of Mr. Ridout -- with Mr. Ridout in particular the demotion rather than termination of the much younger Chad Richett for job performance (App. 242, 243) and the hiring of the much younger Holden despite his checkered work history (App. 269, 270) . Further, the same individuals, particularly Mr. Mulgrew are involved.  One method by which a plaintiff can show pretext is by demonstrating they were treated differently from similarly situated employees who are not part of the protected class.  See, *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005), citing *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999); *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999)

Appellate Case: 12-3220   Page: 44   Date Filed: 10/31/2012 Entry ID: 3969746

Mr. Ridout has shown that there is substantial evidence that JBS-USA's asserted basis for discharge is not the actual reason for his termination. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); see also *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)(in addition to showing employer's reason false or did not actually motivate adverse action, plaintiff can show pretext by showing proffered reason was insufficient to warrant challenged conduct) . In "appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* The jury deserves to make that determination in this case.

## CONCLUSION

As Ridout has presented substantial evidence of age discrimination and that the stated reasons for his termination were pretext the District Court erred in granting JBS-USA, LLC's Motion for Summary Judgment under the Age Discrimination in Employment act ("ADEA").

Similarly, as Ridout has presented substantial evidence of age discrimination and that the stated reasons for his termination were pretext the District Court erred

45

in granting JBS-USA, LLC's Motion for Summary Judgment under the Iowa Civil

Rights Act ("ICRA").

Ridout therefore respectfully requests this Court reverse the judgment of the

District Court and remand the matter for trial.

Respectfully submitted on October 26, 2012

/s/John O. Haraldson_____
John O. Haraldson AT0003231
Sellers Haraldson & Binford
400 Locust St., Suite 170
Des Moines, Iowa 50309
Tel: (515) 224-6686
Fax: (515) 224-6760
email: haraldsonlaw@yahoo.com

ATTORNEY FOR APPELLANT

Appellate Case: 12-3220    Page: 46    Date Filed: 10/31/2012 Entry ID: 3969746

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,884 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2010 word processing software in Times New Roman font size 14.

3.      Ten (10) paper copies and one digital version of this brief will be filed herewith.  The digital version has been converted to a PDF filed and copied onto a CD-Rom that has been scanned and certified free of viruses.

*/s/John O. Haraldson*___
John O. Haraldson

## CERTIFICATE OF SUBMISSION

I hereby certify that on October 26, 2012, I filed the foregoing Appellant's Brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit at Thomas F. Eagleton Courthouse, Rm 24.329, 111 South 10th Street, St. Louis, MO 63102, be electronic filing with the CM/ECF system, which provided notice to the following attorneys:

Gene R. La Suer
Davis, Brown, Koehn, Shors & Roberts, P.C.
215 10th Street, Suite 1300

Appellate Case: 12-3220     Page: 47     Date Filed: 10/31/2012 Entry ID: 3969746

Des Moines, Iowa 50309-3993

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202

I further certify that on _____, 2012 I mailed two copies of

the Appellant's Brief herein to each of the above-named attorneys, by First

Class regular mail, postage prepaid.

/s/John O. Haraldson___
John O. Haraldson

## CERTIFICATE OF COMPLIANCE
## WITH EIGHTH CIR. RULE 28A(h)(2)

I hereby certify that the electronic copy filed herewith was scanned

for viruses and is virus-free.

/s/John O. Haraldson___
John O. Haraldson

48

# INDEX TO ADDENDUM

Order of District Court dated August 20, 2012……..Addendum 1-25

Appellate Case: 12-3220     Page: 49     Date Filed: 10/31/2012 Entry ID: 3969746